IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | 1:08CR291-1 |
| ) | |
| ROBERT CHRISTOPHER PARKS, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION

BEATY, Chief District Judge.

This matter is before the Court on Defendant Robert Christopher Parks' ("Defendant") Motion to Quash Search Warrant and Suppress Evidence Wrongfully Seized [Document #11]. Defendant is under indictment for Possession of Firearms by a Convicted Felon in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2). On November 26, 2008, Defendant moved to quash the search warrant that was issued in this case, and to suppress wrongfully seized items that were recovered from the subsequent search of Defendant's residence. On January 6, 2009, a hearing was held on the motion. Assistant United States Attorney Terry Meineke appeared on behalf of the Government and Attorney Thomas Johnson appeared on behalf of Defendant. For the reasons stated below, Defendant's motion will be DENIED.

I.    FACTUAL BACKGROUND

On or about November 14, 2007, Officer Jonathan Cheek from the Rockingham County Sheriff's Department responded to 521 Bailey Farm Road, Ruffin, North Carolina to a call of

communication of threats and discharging of a firearm. At the location, Officer Cheek spoke with Timothy Tucker ("Tucker"), the individual that made the initial call to the Sheriff's Department. Tucker told Officer Cheek that on November 12, 2007, he was hunting on nearby property that Tucker leased from Joel Long. Apparently, however, Tucker was on property owned by Defendant, which Defendant asserts that he did not lease to anyone for the purpose of hunting. Upon seeing Tucker's vehicle parked on his property, Defendant proceeded to confront Tucker to tell him that he was trespassing. Tucker told Officer Cheek that when the Defendant came into view, Tucker saw that Defendant was carrying a shotgun. Upon approaching Tucker, Defendant told him to leave the property and not to return. Tucker, however, told Officer Cheek that after the exchange, Defendant walked away and fired five or six shots into the air. In addition to the details of the events that occurred on November 12, 2007, Tucker also reported to Officer Cheek that he believed that Defendant was a convicted felon.

After the interview with Tucker, Officer Cheek reviewed Defendant's criminal history report which revealed that Defendant had previously been convicted on December 15, 1988, in Guilford County for possession with intent to sell and deliver cocaine. Officer Cheek then spoke with his officer in charge who told him to contact the Rockingham County District Attorney with regard to Defendant's criminal history. Officer Cheek did so and the District Attorney's Office confirmed that Defendant was a convicted felon, in that he had been previously convicted on state felony drug charges. Officer Tucker then compiled a report of his investigation, attached Defendant's criminal history, and forwarded the information to the

detective's division. Detective Daniel Southard reviewed the reports, conducted two independent interviews of Tucker, and obtained his signed written statement. The substance of Detective Southard's interviews with Tucker were in conformity with Tucker's initial report to Officer Cheek. As a result of Detective Southard's investigation, including his confirmation of the information about Defendant's status as a convicted felon, Detective Southard, on November 16, 2007, applied for and obtained a warrant to search Defendant's residence at 650 Maverick Road, Ruffin, North Carolina for firearms. Upon arrival at Defendant's residence, the officers on the scene for the purpose of executing the search warrant first encountered Defendant's wife. She was informed that the officers had a warrant to search the residence for firearms. Defendant subsequently arrived at the residence and Detective Southard informed him that the officers were there to search the residence for firearms. Detective Southard then asked Defendant if he had any weapons or drugs inside the residence to which Defendant answered affirmatively. Subsequently, Defendant signed a written authorization for the officers to conduct a search of his person, his vehicle, and his residence. Detective Southard also obtained consent to search from Defendant in order to search for drugs because the search warrant was limited to firearms and firearms-related evidence. The officers then entered and searched the home and recovered 13 firearms, various types of ammunition, marijuana, drug paraphernalia, documents showing that Defendant lived at the residence, and approximately $11,000. Defendant was subsequently arrested on state charges of possession of drug paraphernalia and misdemeanor maintaining a dwelling house for controlled substances. On August 25, 2008, Defendant was indicted by a federal grand jury for possession of firearms by a convicted felon based in part on

3

the firearms evidence recovered from Defendant's residence pursuant to the search warrant. Defendant now raises a challenge to the search warrant under <u>Franks v. Delaware</u>, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), contending that the affidavit upon which the search warrant was based alleges false statements that were made knowingly or intentionally, and with reckless disregard for the truth. Specifically, Defendant contends that statements by Tucker, the individual that reported the incident to the police, were knowingly and intentionally false statements, made with reckless disregard for the truth. Defendant therefore requests that the Court enter an order quashing the search warrant and suppressing any evidence seized pursuant to the search warrant. Defendant also contends that the property seized was not that which was described in the search warrant, and therefore should be returned as wrongfully seized property. Finally, Defendant contends that his arrest was illegal, and as a result any conversations or statements made by Defendant subsequent to his arrest should be suppressed.

II.     DISCUSSION

    A.     <u>Franks</u> Challenge to the Search Warrant

Defendant's challenge to the warrant under <u>Franks v. Delaware</u> asserts that the affidavit upon which the search warrant was based contains statements by Tucker that were knowingly and intentionally false, and made with reckless disregard for the truth. In light of this contention, however, the Court will first address the validity of the search warrant. In order for a search warrant to be valid, it must be issued upon a finding of probable cause made by an independent judicial officer. <u>See</u> <u>United States v. Hodge</u>, 354 F.3d 305, 309 (4th Cir. 2004). Once a search warrant has been issued, review of the probable cause determination made by the

4

judicial officer is to be shown great deference. See United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990). "[T]he task of a reviewing court is not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." Massachusetts v. Upton, 466 U.S. 727, 728, 104 S. Ct. 2085, 2085, 80 L. Ed. 2d 721 (1984). Moreover, probable cause to search is "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983). In order to establish probable cause for the issuance of a search warrant based in part on an informant's tip, it is necessary to consider all the circumstances set forth in the affidavit. See Hodge, 354 F.3d at 309 (citing Gates, 462 U.S. at 238, 103 S. Ct. at 2317). Moreover, "[a]lthough the informant's veracity, reliability and basis of knowledge are relevant, they are no longer independent requirements." United States v. Lalor, 996 F.2d 1578, 1581 (4th Cir. 1993) (citing Gates, 462 U.S. at 230, 103 S. Ct. at 2328). "An important factor in determining whether an informant's report establishes probable cause is the degree to which it is corroborated." Lalor, 996 F.2d at 1581. In addition, "[c]orroboration of apparently innocent details of an informant's report tends to indicate that other aspects of the report are also correct." Id.

In this case, the affiant, Detective Southard, applied for a warrant to search for firearms and firearms-related evidence stating that there was probable cause to believe that Defendant was a convicted felon and in possession of a firearm in violation of state law. The affidavit recounts Officer Cheek's report wherein he was advised by Tucker that he had seen Defendant in possession of a shotgun two days prior, and that Tucker believed Defendant to be a convicted

5

felon.  The affidavit also contains information that Detective Southard conducted independent interviews with Tucker during which Tucker again stated that he saw the Defendant in possession of a firearm.  The affidavit also reports that Detective Southard showed Tucker a DMV photo of Defendant to confirm that the person that Tucker saw in possession of the firearm was indeed the Defendant.  The affidavit further contains information that Defendant's criminal history was reviewed and revealed that he had previously been convicted of a felony, that is, possession with intent to sell and deliver cocaine.  The Court notes that Officer Cheek verified that Defendant was indeed a convicted felon prior to applying for the search warrant.  In this regard, the Court notes that the affiant, Detective Southard, was not relying solely on Tucker's statements that Defendant was a convicted felon without any verification.  Moreover, the corroboration of this detail of Tucker's report tends to indicate that Tucker's statement that he was in the presence of Defendant while Defendant was in possession of a firearm was credible and correct.  See Lalor, 996 F.2d at 1581 (finding that "[c]orroboration of apparently innocent details of an informant's report tends to indicate that other aspects of the report are also correct").  The Court therefore finds that based on the information in the affidavit, it is reasonable to believe that the magistrate judge concluded that there was a fair probability that Defendant was a convicted felon and that firearms would be found at Defendant's residence and in his possession.  Furthermore, the Court finds that there is substantial evidence to support the magistrate judge's determination that there was probable cause to issue the search warrant in this case.[1]

---

[1] The Court notes that Defendant has raised the issue of whether Defendant's civil rights have been restored with respect to whether this issue is a factor necessary for the determination

Having made the finding that there was probable cause to issue the search warrant, the Court notes that Defendant raises a <u>Franks</u> challenge contending that the affidavit supporting the search warrant contains false statements. The Supreme Court has held that, while a defendant may challenge the veracity of a search warrant affidavit, the defendant has the burden of establishing two preliminary requirements. See <u>Franks</u>, 438 U.S. at 155-56, 98 S. Ct. at 2676-77. First, the defendant must establish by a preponderance of the evidence that a false statement made knowing and intentionally, or with reckless disregard for the truth, was included by the affiant in the search warrant affidavit. <u>Id.</u> 438 U.S. at 171, 98 S. Ct. at 2684. Moreover, the deliberate falsity or reckless disregard must be "that of the affiant, not of any nongovernmental informant." <u>Id.</u> Second, the defendant must establish that the purported false statements were necessary to the finding of probable cause to issue the search warrant. <u>Id.</u> 438 U.S. at 171-72, 98 S. Ct. at 2684. Finally, a defendant is only entitled to a <u>Franks</u> hearing regarding a challenge to the veracity of an affidavit supporting a search warrant if the defendant makes these two preliminary showings. See <u>United States v. Colkley</u>, 899 F.2d 297, 300 (4th Cir. 1990).

In this case, Defendant does not identify any specific statements that he contends are false statements contained within the affidavit that supports the search warrant. Defendant merely states in his motion that statements by Tucker "were knowingly and intentionally false

---

of probable cause to issue the search warrant. The Court has determined that the question of whether Defendant is a convicted felon whose civil rights have been restored such that he may possess a firearm in any or all circumstances is not necessary to the probable cause determination to issue a search warrant in this instance. Nevertheless, although not relevant here, this issue may be one that concerns the merits of the offense charged in the indictment, in which case, the parties would need to brief the issue of restoration of the civil right to possess a firearm under the applicable state and federal laws before the Court could reach a conclusion on the issue.

7

statements, made with reckless disregard for the truth." (Def.'s Mot. to Quash at 5 [Document #11].) This conclusive contention does not establish by a preponderance of the evidence that a false statement was included in the affidavit. The affidavit recounts in detail Tucker's initial report to Officer Cheek and Detective Southard's interview with Tucker. To the extent that Defendant contends that these "statements by Tucker" are false, Defendant fails to identify the falsity of any statement or fact as set out in the affidavit. The Court finds therefore, that Defendant has failed to establish by a preponderance of the evidence that any statements made in the affidavit are false. Thus, the Court finds that Defendant has failed to establish this preliminary showing which is required in order to assert a Franks challenge to a search warrant, and therefore, Defendant's Franks challenge to the warrant fails. Moreover, even if Defendant were able to establish that specific false statements were indeed included in the affidavit, and that those false statements were included either knowingly and intentionally, or with reckless disregard for the truth, Defendant has made no showing that any alleged false statements, as attributed to Tucker or otherwise included by Detective Southard, were necessary to the finding of probable cause to issue the search warrant. As stated above, based on the information in the affidavit, that is, that Tucker saw Defendant in possession of a firearm, and that it was verified that Defendant was a convicted felon, the Court finds that the magistrate judge had probable cause to issue the warrant to search Defendant's residence. Thus, since Defendant has made no showing that any alleged false statements were necessary to the finding of probable cause to issue the search warrant, Defendant has failed to establish the required preliminary showing necessary to assert a Franks challenge. Therefore, since Defendant has failed to make the

required preliminary showings necessary to assert a Franks challenge, the Court concludes that in any event, Defendant's challenge to the search warrant based on Franks v. Delaware must fail. In addition to this finding, and having previously made the finding that the search warrant was issued pursuant to a finding of probable cause, the Court now concludes that the search warrant was validly issued. Therefore, based on the Court's conclusion that the search warrant in this case is valid, Defendant's motion to quash the search warrant will be denied.

B. Consent to Search

Even if Defendant contends that the search warrant is invalid, the Government may nevertheless establish that the search was permissible under alternative legal grounds in that the officers obtained valid consent to search the residence from Defendant prior to the search. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043, 36 L. Ed. 2d 854 (1973) (internal quotation and citation omitted). Moreover, it is well settled that a search conducted pursuant to valid consent is one of the well-recognized exceptions to the Fourth Amendment's general warrant requirement. Id.; United States v. Boone, 245 F.3d 352, 361 (4th Cir. 2001). If challenged, the district court must determine, based upon the "totality of the circumstances," whether consent was knowing and voluntary, which the Government must prove by a preponderance of the evidence. See United States v.

9

Mendenhall, 446 U.S. 544, 557, 100 S. Ct. 1870, 1879, 641 L. Ed. 2d 497 (1980); United States v. Buckner, 473 F.3d 551, 554 (4th Cir. 2007). "[W]hether a consent to a search was in fact "voluntary" or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Schneckloth, 412 U.S. at 227, 93 S. Ct. at 2048. In this regard, to determine whether consent was voluntary or the product of police coercion, a district court should determine whether based on the totality of the circumstances a person's will was overborne by the actions of law enforcement. Id. 412 U.S. at 226-27, 93 S. Ct. at 2047. "In viewing the totality of the circumstances, it is appropriate to consider the characteristics of the accused (such as age, maturity, education, intelligence, and experience) as well as the conditions under which the consent to search was given (such as the officer's conduct; the number of officers present; and the duration, location, and time of the encounter). United States v. Lattimore, 87 F.3d 647, 650 (4th Cir. 1996). Moreover, "[w]ritten consent supports a finding that the consent was voluntary." Id.

In this case, prior to the search of Defendant's residence, Detective Southard informed Defendant that he knew that Defendant had a prior drug conviction, that is, possession with intent to sell and deliver cocaine, and for that reason asked Defendant if there were drugs in the residence. After Defendant responded affirmatively, Detective Southard asked Defendant to sign a written form to give the officers consent to search for drugs. After this exchange, and before the officers entered the residence to execute the search warrant, Defendant signed a written consent to search. The Government contends that based on a totality of the circumstances, there is no information upon which to invalidate what otherwise appears to be

10

valid consent to conduct the search of Defendant's residence. The Government presented evidence which establishes Defendant's age (forty years-old), his display of at least average intelligence and education, and his prior experience with the criminal justice system due to his convictions on several prior occasions, all of which are indicia that Defendant's consent was knowing and voluntary. The Government also contends that the plain language of the consent form, which states the following: that the officers present wish to conduct a search of certain property, that authorization may be limited to certain areas, and that consent may be withdrawn at any time, is also evidence that Defendant's consent was freely and voluntarily given. Moreover, the form was read aloud to Defendant, and Defendant acknowledged that he understood the form. Defendant, however, contends that consent was not voluntary because prior to signing the consent form, Defendant and his wife were threatened. Specifically, Defendant contends that just prior to giving consent Detective Southard threatened that the officers were going to charge his wife with a crime and that they were going to take or destroy his property. Officer Southard, however, testified that he made no such statements to Defendant.

With regard to the circumstances leading up to and surrounding the request for Defendant's consent, the Court notes that the fact that Defendant signed a consent form is a strong indication that consent was voluntary. See Boone, 245 F.3d at 362 (finding that "[w]ritten consent supports a finding that the consent was voluntary"). Moreover, Defendant's age and the fact the he read, and was read, the consent form, and stated that he understood its contents indicates that Defendant's consent was voluntary. In addition, while Defendant contends that

11

he was threatened, and thus coerced into signing the consent form, the Court notes that based on the briefs filed by the parties, and the testimony of the witnesses at the hearing, there is no information to corroborate Defendant's contentions. In addition, no evidence was presented that the officers displayed or pointed weapons, used physical force towards, or otherwise made a showing of physical force towards Defendant. In this regard, the Court finds that based upon a totality of the circumstances Defendant's will was not overborne by the actions of law enforcement, and thus, Defendant's consent was not the product of police coercion. Therefore, based on a totality of the circumstances, the Court finds that the preponderance of the evidence shows that Defendant's consent was knowing and voluntary. Therefore, having previously concluded that the search warrant for firearms and firearms-related evidence in this case is valid, the Court also finds that there is merit in the Government's alternate contention that Defendant's consent to a search of his property for drugs is valid.

    C.    Wrongfully Seized Property

Notwithstanding the Court's findings that the search of Defendant's residence was valid in all respects, Defendant contends that the property seized during the search of his residence was "not that which was described in the warrant," and that the wrongfully seized property should be returned to Defendant. The permissible scope of a search warrant is limited to the explicit provisions contained within the search warrant. See United States v. Wardrick, 350 F.3d 446, 453 (4th Cir. 2003). However, the general rule is that unnamed items may be seized upon probable cause absent flagrant disregard for the terms of the search warrant, and provided that the scope, intensity, and duration of the search authorized by the warrant was not exceeded in

12

acquiring that probable cause. See United States v. Hill, 322 F.3d 301 (4th Cir. 2003); United States v. Ruhe, 191 F.3d 376 (4th Cir. 1999). The permissible scope of an otherwise valid consent search is that which a reasonable person would have understood from the interchange between the officer and the person granting consent. Florida v. Jimeno, 500 U.S. 248, 251, 111 S. Ct. 1801, 1803-04, 114 L. Ed. 2d 297 (1991). Individuals may limit the scope of their consent, but when an individual does not expressly limit the scope of the search, the test remains what a reasonable person would believe to be included within the scope of consent. Id. 500 U.S. at 252, 111 S. Ct. at 1801.

Moreover, even when there may neither be authorization to search and seize items pursuant to a warrant, nor valid consent to search, law enforcement may nevertheless seize items pursuant to the plain view doctrine. See United States v. Jackson, 131 F.3d 1105, 1109 (4th Cir. 1997). "[T]he plain-view doctrine authorizes warrantless seizures of incriminating evidence when (1) the officer is lawfully in a place from which the object may be plainly viewed; (2) the officer has a lawful right of access to the object itself; and (3) the object's incriminating character is immediately apparent." Id. The incriminating character of an item is "immediately apparent," when the police have probable cause to believe that the object is a fruit, instrumentality, or evidence of a crime. See United States v. Wells, 98 F.3d 808, 810 (4th Cir.1996).

In this case, the search warrant authorized the officers to seize the following items: (1) any and all firearms, handguns, rifles and shotguns; (2) any and all types of firearm ammunition; (3) any and all records and documents showing the purchase or sale of firearms; and, (4) any and all papers showing the ownership of the residence. The inventory of seized property shows that

13

the items seized were firearms, ammunition, firearms paraphernalia, identifying documents (such as a utility bill and drivers license), marijuana, drug paraphernalia, and $10,960.06 in cash. Defendant does not indicate which of these seized items is "not that which was described in the search warrant," nor does Defendant contend that in acquiring any of the items seized that the officers acted with flagrant disregard for the terms of the search warrant, or exceeded the scope, intensity, and duration of the search authorized by the warrant. A review of the items seized and the terms of the search warrant reveal that the firearms, ammunition, firearms paraphernalia, and identifying documents are all items that fall within the scope of the categories detailed in the search warrant. Thus, the Court finds that those items were lawfully seized pursuant to the search warrant.

However, with respect to the marijuana, drug paraphernalia, and the currency that was seized, those items do not fall within the categories listed in the search warrant. Nevertheless, items may be lawfully seized by means other than a search warrant, such as, pursuant to a valid consent to search and under the plain-view doctrine. With respect to the drugs and drug-related items, the Court has already concluded that Defendant validly consented to a search of his property. The evidence offered at the hearing revealed that Defendant was asked by Detective Southard if there were drugs in the residence because the detective informed Defendant that he knew that Defendant had a prior drug conviction. Thereafter, Detective Southard asked Defendant to consent to a search of his property for drugs, to which Defendant agreed by signing a written consent form. Moreover, Defendant did not indicate to Detective Southard that he wished to limit the consent search in any manner. Based on this exchange between the

14

detective and Defendant, the Court finds that a reasonable person would understand that the consent search was limited to a search of the property for drugs and drug paraphernalia. See Jimeno, 500 U.S. at 251, 111 S. Ct. at 1803-04 (noting that the permissible scope of an otherwise valid consent search is that which a reasonable person would have understood from the interchange between the officer and the person granting consent). Therefore, since the permissible scope of the consent search included drugs and drug paraphernalia, the Court finds that the marijuana and drug paraphernalia that were recovered from Defendant's residence were lawfully seized pursuant to a valid consent search for drugs.

With respect to the currency, the $10,960.06 was found in a small metal box in a drawer in a nightstand in Defendant's bedroom. Marijuana and drug paraphernalia were also recovered either from the same drawer, or from another drawer in the same nightstand. The officers were lawfully in Defendant's nightstand drawer, and lawfully had right of access to the drawer and the metal can within the drawer containing the money pursuant to the aforementioned valid consent to search for drugs. See e.g., California v. Acevedo, 500 U.S. 565, 580, 111 S. Ct. 1982, 1991, 114 L. Ed. 2d 619 (1991) (in a search for drugs, police may search containers in which drugs could be found and in which they believe drugs may be contained); Jimeno, 500 U.S. at 251, 111 S. Ct. at 1804 (finding it objectively reasonable for the police to conclude that a general consent to search for drugs included consent to search containers which might bear drugs). Moreover, it is reasonable to find that the officers had probable cause to believe that the currency was a fruit, instrumentality, or evidence of a drug-related crime, given that the large amount of cash was discovered concealed in a metal can inside a nightstand drawer in close proximity to drugs

and drug paraphernalia. See New Jersey v. T.L.O., 469 U.S. 325, 347, 105 S. Ct. 733, 746, 83 L. Ed. 2d 720 (1985) (finding that a fairly substantial amount of cash found with a small quantity of marijuana and drug paraphernalia is evidence of drug-related activity); United States v. $215,300, 882 F.2d 417, 418-19 (9th Cir. 1989) (finding that the concealment of money tends to infer that the money is drug related); United States v. $2,500, 689 F.2d 10, 16 (2d Cir. 1982) (finding that $2,500 in cash is "substantially greater than is commonly kept in residential premises by law-abiding wage earners"). Therefore, since the officers had probable cause to believe that the large sum of currency was evidence of a crime, the incriminating character of the currency was immediately apparent when the money was discovered. See Wells, 98 F.3d at 810) (concluding that the incriminating character of an item is "immediately apparent," when the police have probable cause to believe that the object is a fruit, instrumentality, or evidence of a crime). Based on these circumstances, the discovery of the currency satisfies the requirements under the plain view doctrine and the Court finds that the currency was lawfully seized. See Jackson, 131 F.3d at 1109 ("[T]he plain-view doctrine authorizes warrantless seizures of incriminating evidence when (1) the officer is lawfully in a place from which the object may be plainly viewed; (2) the officer has a lawful right of access to the object itself; and (3) the object's incriminating character is immediately apparent."). Therefore, as to the items seized as listed on the inventory, the seizures took place pursuant to lawful authority, that is, pursuant to the search warrant, valid consent to search for drugs, and pursuant to the plain view doctrine. Having concluded that all of the seizures were pursuant to lawful authority and being that Defendant has failed to establish that the officers seized any items with flagrant disregard for

16

the terms of the warrant, or that the officers exceeded the scope, duration or intensity of the search warrant or the consent search, the items listed on the inventory as seized will not be suppressed.

        D.      Suppression of Statements Made Subsequent to Arrest

Defendant also contends that any conversations or statements made by Defendant after the "illegal arrest" should be suppressed. Warrantless arrests are permitted where there is probable cause to believe that a felony is being or has been committed by the arrested individual, based upon "the totality of the circumstances." Maryland v. Pringle, 540 U.S. 366, 366, 124 S. Ct. 795, 795, 157 L. Ed. 2d 769 (2003). In addition, a warrantless arrest of an individual who has committed a misdemeanor in the arresting officer's presence is also permitted even when some, but not all, of the elements of the misdemeanor were committed in the officer's presence, provided the officer had probable cause to believe that the other elements had been committed outside of his presence. See United States v. McNeill, 484 F.3d 301, 312 (4th Cir. 2007). In this case, Defendant merely provides the conclusory statement that there was an "illegal arrest" without any supporting facts as to what circumstances caused the arrest to be illegal. The facts as presented indicate that Defendant was arrested on state charges of possession of drug paraphernalia and misdemeanor maintaining a dwelling house for controlled substances. Based on the fact that the search of the residence revealed, among other things, the presence of illicit drug paraphernalia and quantities of illicit controlled substances, the Court finds that the officers had probable cause to arrest Defendant. Therefore, the Court concludes that to the extent that Defendant contends that any and all conversations and statements procured subsequent to his
17

arrest should be suppressed due to the illegality of his arrest, the Court rejects this contention based upon the Court's conclusion that Defendant's arrest was supported by probable cause and therefore legal.

III.    CONCLUSION

Having concluded that the search warrant in this case is valid, and that Defendant has failed to make the necessary preliminary showing that any alleged false statements included in the affidavit supporting the search warrant were necessary to the finding of probable cause to issue the search warrant, Defendant's motion to quash the search warrant based on a <u>Franks</u> challenge is denied.  Moreover, for the reasons discussed above, all of the items removed from the residence were seized pursuant to lawful authority, and therefore the Court concludes that this evidence will not be suppressed despite Defendant's contentions that certain unnamed items were wrongfully seized.  Finally, because Defendant's arrest was pursuant to probable cause and thus valid, any statements procured as a direct result of Defendant's arrest will not be suppressed, given the Court's finding that Defendant's arrest was legal.

IT IS THEREFORE ORDERED that Defendant's Motion to Quash Search Warrant and Suppress Evidence Wrongfully Seized [Document #11] is hereby DENIED.

An Order consistent with this Memorandum Opinion will be filed contemporaneously herewith.

This, the 4 day of March, 2009.

_____
United States District Judge

19